Filed 4/26/23  Lanier v. Ford Motor Co. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BRENDA LANIER,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FORD MOTOR COMPANY, et al.,<br><br>Defendants and Appellants. | 2d Civil No. B315114<br>(Super. Ct. No. 21CVP-0042)<br>(San Luis Obispo County) |

Brenda Lanier brought this action under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), commonly known as the "lemon law," after repeated attempts to fix her Ford vehicle failed.  She named Ford Motor Co. (FMC) as a defendant along with Paso Robles Ford, an authorized service center whose technicians attempted the repairs.  Lanier did not name the selling dealer as a co-defendant.

FMC and Paso Robles Ford moved to compel arbitration, citing a provision contained in the sale contract signed by Lanier and the selling dealer.  The trial court denied the motion.  It rejected both theories proffered by defendants:  first, that Lanier

was barred by the doctrine of equitable estoppel from arguing that non-signatories could not enforce the arbitration provision; and second, that defendants could enforce the provision as third-party beneficiaries of the sale contract. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Lanier bought a new 2017 Ford Fiesta from Jim Vreeland Ford in Buellton. She financed her purchase through the dealership and signed a "Retail Installment Sale Contract" (sale contract) identifying her as the "Buyer" and Jim Vreeland Ford as the "Seller-Creditor." Lanier received a 5-year / 60,000 mile powertrain warranty from the manufacturer, FMC, covering the engine and transmission. She did not buy an optional service contract from the dealer.

The Fiesta developed problems with its automatic transmission during the warranty period. Lanier took the vehicle to the factory-authorized service center at Paso Robles Ford (a closer dealership) for repairs. She filed this action when attempts to address the problems failed. Her complaint included five statutory lemon law claims and one fraud claim against FMC. She also brought a single claim for negligent repair against Paso Robles Ford. Lanier did not name the selling dealer as a defendant.

FMC moved to compel arbitration pursuant to a provision in the sale contract requiring Lanier and Jim Vreeland Ford to resolve "any claim or dispute . . . by neutral, binding arbitration and not by a court action." The trial court denied the motion. FMC and Paso Robles Ford appealed. (See Code Civ. Proc., § 1294 ["An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration"].)

---

[1] We source all background facts from Lanier's complaint.

2

DISCUSSION

*Standard of Review*

The trial court decided the motion to compel based on the undisputed terms of the sale contract.  Whether Lanier must arbitrate her claims is therefore a question of law reviewed de novo.  (See *Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541 ["'Ordinarily, we review a denial of a petition to compel arbitration for abuse of discretion.  [Citation.] However, where the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo.'"].)

*Lanier Agreed to Arbitrate Her Claims Against*
*the Selling Dealer But Not Her Claims Against*
*the Manufacturer and Servicer*

"Arbitration is . . . a matter of contract." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59.)  The party seeking to compel arbitration must prove by a preponderance of the evidence that an agreement to arbitrate exists.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1169.)  "'Although "[t]he law favors contracts for arbitration of disputes between parties" [citation], "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ."' [Citations.]'" (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 788, quoting *Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.)  A nonsignatory bears the burden of establishing it should be treated as a party to the arbitration agreement.  (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 15.)

The sale contract here refers to arbitration on the second page, where it states:  "Agreement to Arbitrate:  By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve

3

any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitration."

The arbitration provision itself then states: "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL. [¶] . . . [¶] Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors, or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."

Appellants contend Lanier must arbitrate her case because it "arises out of or relates to" the purchase of her Fiesta and the vehicle's "condition," i.e., its alleged transmission defects and Paso Robles Ford's attempts to repair them. While appellants are not parties to the sale contract, they claim standing to enforce the arbitration provision by virtue of the language above stating the provision applies to "any . . . relationship with third parties who do not sign this contract." We interpret the sale contract differently.

The arbitration provision is limited to "[a]ny claim or dispute . . . *between you and us or our employees, agents, successors, or assigns . . . .*" (Italics added.) The sale contract defines "you" as the buyer (Lanier) and "us" as the seller-creditor (Jim Vreeland Ford). Jim Vreeland Ford is not a party to this dispute and appellants are not the dealer's "employees, agents,

4

successors, or assigns." It follows Lanier did not agree to arbitrate any claim or dispute with appellants.

We now turn to whether appellants may compel arbitration in the absence of an agreement.

*Equitable Estoppel Does Not Compel Lanier to Arbitrate*
*Her Claims Against Appellants*

Appellants contend Lanier is equitably estopped from objecting to their standing to enforce the sale contract's arbitration provision. (See *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 219, italics omitted [nonsignatory may compel arbitration "when the claims against the nonsignatory are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause"].) The purpose of doctrine is "to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." (*Id.*, at p. 221.) We examine the facts of Lanier's complaint to determine whether the doctrine applies here. (*Id.*, at pp. 229-230.)

The first five of Lanier's seven causes of action target FMC's alleged violations of state lemon law. FMC's statutory liabilities to Lanier as a purchaser of a Ford vehicle exist independently of the sale contract. The dealer's role as a commercial conduit neither created nor limited Lanier's statutory remedies against the manufacturer. (See *Ngo v. BMW of N. Am., LLC* (9th Cir. 2022) 23 F.4th 942, 949, quoting *Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 60-61 [manufacturer's express and implied warranties "arise 'independently of a contract of sale'"].) The sale contract states as much on page 4: "WARRANTIES SELLER DISCLAIMS [¶] If you do not get a written warranty, and the Seller does not enter into a service

5

contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will not no implied warranties of merchantability or of fitness for a particular purpose. [¶] *This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.*" (Italics added.) Lanier did not name Jim Vreeland Ford as a defendant and does not allege wrongdoing on its part as the selling dealer.

Lanier's sixth cause of action for fraud by omission alleges FMC concealed known transmission defects from prospective buyers of the Fiesta. She does not allege Jim Vreeland Ford misrepresented any fact to Lanier in the sale contract or otherwise participated in the fraud. Like the lemon law causes of action, her fraud claim focuses on FMC's obligations to Lanier as the end user of a product it manufactured.

Lanier's seventh and final cause of action for negligent repair alleges Paso Robles Ford failed "to properly store, prepare and repair" her Fiesta. This occurred after Lanier bought the vehicle. The complaint states Paso Robles Ford performed these services on behalf of FMC and not the selling dealer. In addition, the sale contract indicates Lanier declined to purchase an optional dealer service contract at the time of purchase. Jim Vreeland Ford's role in Lanier's case is non-existent.

The trial court correctly distinguished *Felisilda v. FCA US LLC* (2020) 53 Cal.App.5th 486. Plaintiffs in *Felisilda* signed a form sale contract nearly identical to Lanier's. They brought a single Song-Beverly claim against the dealer and manufacturer after their car experienced mechanical problems. The trial court compelled plaintiffs to arbitrate against both defendants even though the manufacturer did not sign the sale contract. The reviewing court affirmed, citing language in the contract requiring plaintiffs to arbitrate even those claims against "third

parties who do not sign this contract." (*Id*. at p. 490, italics omitted.) *Felisilda* is not controlling here. Lanier did not name the dealer-signatory as a defendant or identify the sale contract as the source of the warranties or duties at issue. We need not reach the question of whether her claims against FMC and Paso Robles Ford fall within the scope of that agreement.

*Appellants May Not Enforce the Arbitration Provision*
*As Third Party Beneficiaries*

Appellants contend they may enforce the arbitration provision as third-party beneficiaries of the sale contract. (See Civil Code, § 1559 ["A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it"].) We examine "the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to, in order to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to [enforce the contract] against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.)

The sale contract contains no language evidencing Lanier and the dealer intended to benefit appellants. The arbitration provision describes exactly who may invoke its terms. The initial reference to dispute resolution states: "you [Lanier] or we [Jim Vreeland Ford, etc.] may elect to resolve any dispute by neutral, binding arbitration and not by a court action." The arbitration provision begins with nearly identical language ("EITHER YOU OR WE MAY CHOOSE . . . .") and reiterates that claims and disputes "shall, *at your or our election*, be resolved by neutral,

7

binding arbitration and not by a court action." (Italics added.) The reference to "'third parties who do not sign this contract'" does not give appellants standing to compel arbitration. Read in context, this language ensures the buyer or seller cannot circumvent the provision by joining a non-signatory as a party to the claim or dispute. (See *In re Ford Motor Warranty Cases* (Apr. 4, 2023, B312261) ___ Cal.App.5th ___ [2023 Cal.App. Lexis 255, *22], citing *Ngo v. BMW of N. Am., LLC*, *supra*, 23 F.4th at p. 948 [reference to third party non-signatories "concerns *what* may be arbitrated, not *who* may arbitrate"].)

CONCLUSION

The order denying appellants' motion to compel arbitration is affirmed. Respondent shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED</u>

GILBERT, P.J.

We concur:

YEGAN, J.                    LUI, A.P.J.*

---

* Administrative Presiding Justice of the Court of Appeal, Second Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California constitution.

8

Linda D. Hurst, Judge
Superior Court County of San Luis Obispo

_____


Shook Hardy & Bacon, Amir Nassihi, Rodrigo E. Salas and Andrew Chang, for Defendants and Appellants.

Gupta Wessler, Jennifer Bennett and Linnet Davis-Stermitz; Strategic Legal Practices, Tionna Grace Dolin, for Plaintiff and Respondent.